*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2011-198

MAY TERM, 2012

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windham Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Norman J. Lizotte | } | DOCKET NO. 1478-11-08 Wmcr |

Trial Judge: David T. Suntag

In the above-entitled cause, the Clerk will enter:

Defendant appeals a sentence of twenty-five years to life following his guilty pleas to multiple charges including kidnapping, and assault and robbery. On appeal, defendant argues that the court abused its discretion during sentencing by likening defendant's actions to second-degree murder when that crime was not charged. We affirm.

In November 2008, defendant was charged with kidnapping, aggravated assault, assault and robbery, interference with access to emergency services and operation of a vehicle without the owner's consent based on an incident in which defendant and his girlfriend assaulted defendant's friend, with whom they were living, tied her up and stole her truck and credit cards. In December 2010, defendant pleaded guilty to all charges, except the aggravated assault, which was later dismissed by the State. At the change-of-plea hearing, defendant admitted that he had assaulted and restrained the victim, stolen her belongings and car and attempted to flea the state with his girlfriend. He also admitted that he took the victim's phones to prevent her from contacting police.

There was no agreement on sentencing, and the court held a contested hearing in May 2011. At the hearing, the victim testified concerning the kidnapping and assault. She explained that in the fall of 2008 she invited defendant and his girlfriend to stay at her house because they had been living in a tent. After they had been living at her house rent-free for several weeks, she notified them that they would have to leave in December. On the evening of November 11, 2008, the victim was making dinner when defendant attacked her from behind and started strangling her. Defendant's girlfriend then hit the victim on the head with a beer bottle. The victim tried to get away through the door, but defendant and his girlfriend dragged the victim inside and slammed the door, and punched the victim in the head. Defendant then hit her in the head with the beer bottle twice, breaking the bottle the second time. Defendant's girlfriend got some duct tape and telephone wire. Defendant tied the victim's knees, ankles and hands and taped her mouth. Defendant and his girlfriend dragged the victim into the bedroom. Defendant stomped on the victim's face and said, "have a nice life, bitch." Defendant and his girlfriend then left in the victim's truck.

The victim managed to free her hands and remove the tape and bindings. She went to her neighbor's house, who called the police. The victim was taken to the local hospital and then brought by helicopter to Dartmouth Hitchcock Medical Center due to the severity of her injuries. She was kept in the hospital for three days because her head injuries were life-threatening. Following her release, the victim underwent physical therapy for two months and occupational therapy for three months. Due to the assault, she has post-traumatic stress disorder and permanent nerve damage in one eye.

A Brattleboro police officer testified that defendant and his girlfriend were apprehended in Massachusetts following a car pursuit which ended in a vehicle accident. Both fled the scene of the crash on foot, but were eventually arrested.

Defendant also testified. He admitted to attacking the victim and choking her. He explained that he did not want to cause her injury, but wanted to make her pass out so he could steal her truck. Defendant agreed with the victim's account of the assault, except that he claimed he did not stomp on her head. He admitted to tying up the victim and taking her phones so that she could not call the police.

The State requested a sentence of thirty-five years to life, emphasizing the heinous nature of defendant's assault and that defendant was on probation when he committed the assault and kidnapping. The State requested the sentence both to punish defendant and to protect society. Defendant's attorney argued for leniency, emphasizing that defendant's prior crimes were all nonviolent and that this assault was out of character. He argued that defendant did not mean to hurt the victim and was just trying to get her to pass out so that he could take the truck. He claimed that the case was really about the aggravated assault and thus requested a sentence of fifteen years to life. The Department of Corrections suggested a twenty-five-years-to-life sentence.

Following presentation of the evidence, the court ruled on the record. The court began by recounting the heinous nature of the crime. The court explained that "the crime is so severe that there must be a response commensurate with the severity of the offense." The court referenced the sentencing of defendant's girlfriend, wherein the court had explained that the facts were akin to a second-degree murder case because the injuries were so severe that death could have resulted. In comparing the sentence to that of defendant's girlfriend, the court found defendant's situation was aggravated by the fact that he was on probation at the time of the offense and he had personally known the victim and violated her trust. The court also referenced the fact that defendant had prior offenses and had not previously cooperated with Department of Corrections programming. The court explained, "This is basically a second degree murder case, and you have some aggravating factors over the presumptive minimum term. So that what the Department of Corrections is recommending in this instance is actually what I'm going to do, because I think it's correct." The court then sentenced defendant to twenty-five years to life. This automatic appeal followed.

On appeal, defendant argues that the court thought his actions warranted an attempted second-degree murder charge and abused its discretion by considering the penalties for second-degree murder even though attempted murder was not charged. Defendant claims that it was error for the court to consider this uncharged offense.

The sentencing court has broad discretion to determine the appropriate penalty and if a sentence falls within the statutory limits, we will affirm it unless it was "derived from the court's reliance on improper or inaccurate information." State v. Ingerson, 2004 VT 36, ¶ 10, 176 Vt.

428. "Although a sentence that is based on improper information may be vacated on appeal, it must be recognized that the [trial] court may properly consider more than the facts of the particular crime at issue when sentencing defendant." Id. (citation omitted).

We conclude that there was no error in this case. First, the sentence was well within the statutory limit for kidnapping, which carries a maximum life sentence. 13 V.S.A. § 2405(b). Second, there was no improper consideration of unproven conduct. Defendant likens this case to State v. Williams, wherein this Court concluded that the defendant was entitled to resentencing because the sentencing judge improperly considered hearsay information about criminal activities for which the defendant had not been tried, charged or convicted. 137 Vt. 360, 364 (1979). The concern in Williams—that a sentencing court must not consider mere assertions of criminal activities—is simply not present here because no unsupported criminal allegations were considered at defendant's sentencing. The court based its decision on the particular facts of defendant's crime. These facts were testified to in detail by the victim at sentencing, and, except for some details, were unchallenged by defendant. See State v. Rice, 145 Vt. 25, 31 (1984) (holding that there was no error where sentencing was based on victims' testimony and subject to cross-examination). Thus, the court's decision was not based on unsupported allegations.

Defendant's contention that the court erred in arriving at a sentence by comparing his offenses to a second-degree murder charge is also without merit. While the court explained that defendant's acts could have resulted in the victim's death, the court did not improperly sentence based on the statutory range for second-degree murder. When read in context, the court's comments about second-degree murder were to emphasize the particularly violent nature of defendant's acts and the severity of the victim's injuries. These were both appropriate considerations at sentencing. See State v. Greenslet, 146 Vt. 256, 258 (1985) (explaining that sentencing court bases decision on the nature of offense and offender, among other considerations). The sentence was thus within the court's discretion.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

3